210 So.2d 229 (1968)
Henoch MENDELSUND, As Treasurer of Joint Board of Cloak, Suit, Skirt and Reefer Makers Unions, an Unincorporated Association, Appellant,
v.
SOUTHERN-AIRE COATS OF FLORIDA, INC., a Florida Corporation, and Louis Dworkin, Appellees.
No. 67-43.
District Court of Appeal of Florida. Third District.
May 7, 1968.
Kaplan & Shapiro, Miami Beach, Emil Schlesinger, New York City, for appellant.
Bernard B. Weksler; Roy Schenerlein, Miami, for appellees.
Before CHARLES CARROLL, C.J., and PEARSON and SWANN, JJ.
SWANN, Judge.
The question before us on this appeal is whether certain judgments entered in New York confirming an award in arbitration proceedings are binding in Florida upon Southern-Aire, appellee.
The appellant, referred to herein as the union, originally instituted arbitration proceedings in New York against Larry Levine, Inc. and its two 50% stockholders, Larry Levine and Louis Dworkin. The union asserted that Larry Levine, Inc., a member of the New York Coat and Suit Association, had violated the collective labor agreement that existed between the Union and the Association. In particular, Larry Levine, Inc. was charged with operating, conducting and maintaining a non-union shop for the manufacture of certain garments and the failure to maintain proper and adequate books. This non-union shop was alleged to be Southern-Aire Coats of Florida, Inc., a defendant below. Southern-Aire is a Florida corporation, of which the stockholders at the time the union filed its original charges were Larry Levine, Louis Dworkin and Martin Goldberg, a salesman for Larry Levine, Inc. Levine and Dworkin were the holders of two-thirds of all the outstanding common and all of the preferred stock of Southern-Aire.
*230 During the New York arbitration proceedings, the attorney for Larry Levine, Inc. made the following statement before the impartial chairman:
* * * * * *
"Mr. Hirsch: Mr. Chairman, I wish to state on behalf of Larry Levine, Inc., and Southern-Aire Coats of Florida, Inc. that all of the facts in the complaint are true; that Southern-Aire Coats of Florida is the alter ego of Larry Levine, Inc., and I am authorized to represent both Larry Levine, Inc. and Southern-Aire Coats of Florida, Inc., and both submit to the jurisdiction of the Impartial Chairman of the Coat and Suit Industry."
* * * * * *
He also stated that he was authorized to represent both Dworkin and Larry Levine, individually.
On July 14, 1965, at the hearing before the Impartial Chairman, attorney Hirsch made an offer of settlement on behalf of the respondents[1] therein, which provided, inter alia, that Southern-Aire would liquidate its business not later than September 30, 1965.
The Impartial Chairman withheld his award pending a report as to whether there had been compliance with this settlement offer. He was subsequently advised that although Larry Levine and Louis Dworkin had disassociated themselves from Southern-Aire in October, 1965, Martin Goldberg had become its sole stockholder and Louis Dworkin was continuing to participate, directly or indirectly, in the affairs of Southern-Aire. In addition, Goldberg had refused to reveal whether he intended to liquidate Southern-Aire, and was expanding its operations while maintaining it as a non-union shop.
Accordingly, the Impartial Chairman entered his award which provided, inter alia, that Southern-Aire liquidate its business and that Larry Levine individually and Louis Dworkin individually were not to become associated in any capacity whatsoever, directly or indirectly, with Southern-Aire.
The Union then successfully brought action in the New York Supreme Court to confirm the Impartial Chairman's award in all respects against Larry Levine, Inc., Larry Levine, individually, Louis Dworkin individually, and Southern-Aire. Personal service was obtained on all parties and defaults entered therein against all parties except Southern-Aire, which was represented during the New York Supreme Court proceedings by new and separate counsel.
The judgment of the New York Supreme Court confirming the Impartial Chairman's award was subsequently affirmed on appeal by the New York Supreme Court, Appellate Division.
The Union filed its Motion and Application for Enforcement of Foreign Judgment upon Award of Arbitrator in Florida pursuant to Fla. Stat. §§ 57.26 and 57.27(2) (1965).[2] This relief was denied by the trial court's final decree, and the union has taken this appeal. We reverse.
Southern-Aire was subject to the jurisdiction of the New York Supreme Court. It was personally served, entered its appearance by its attorney, was party to a stipulation for an extension of time, and also filed a cross-motion for an order vacating or modifying the award of the Arbitrator.
Furthermore, on the basis of sufficient, competent evidence in the record, the Impartial Chairman made a finding in his award that the truth of the union's charge that Southern-Aire was the alter ego of Larry Levine, Inc. had been established. This award was confirmed in all respects by the New York Supreme Court.
*231 In Fisser v. International Bank, 282 F.2d 231, 234 (2d Cir.1960), the court stated that:
* * * * * *
"* * * [T]he consequence of applying the alter ego doctrine is that the corporation and those who have controlled it without regard to its separate entity are treated as but one entity, and at least in the area of contracts, the acts of one are the acts of all."
* * * * * *
In addition, the representations made before the Impartial Chairman by the attorney for Larry Levine, Inc.  that he was authorized to represent Southern-Aire and that they submitted to the Impartial Chairman's jurisdiction  were not subsequently challenged or disproven by Southern-Aire in the New York court proceedings.
Generally, there is a presumption that an attorney, as an officer of the court, is duly authorized to act for a client whom he professes to represent. See 7 C.J.S. Attorney and Client § 73. In the absence of some pleading questioning the attorney's acts upon the ground of fraud, or otherwise, the presumption is conclusive. National Bond & Investment Co. v. McCoy, 263 S.W. 1089 (Tex.Civ.App. 1924). In Louth v. Woodard, 114 Or. 603, 236 P. 480 (1925) and Johnson v. Baumhoff, 322 Mo. 1017, 18 S.W.2d 13 (1929) it was held that a domestic judgment cannot be collaterally attacked on the ground that it was rendered upon the unauthorized appearance of an attorney. See also Tatum v. Maloney, 226 App.Div. 62, 234 N.Y.S. 614 (1929); United States Plywood Corp. v. Neidlinger, 41 N.J. 66, 194 A.2d 730, 8 A.L.R.3d 896 (1963).
Consequently, we conclude that Southern-Aire was afforded ample opportunity to litigate in the New York proceedings any and all of matters which it sought to litigate in the court below. In Midessa Television Co. v. Motion Pictures for Television, 290 F.2d 203 (5th Cir.1961), it was stated:
"There is no better settled principle in the law than that a judgment for the merits in one suit is res judicata in another, where the parties and the subject matter are the same, not only as respects matters actually presented to sustain or defeat the right asserted but also as to any other available matter which might have been presented. Cromwell v. County of Sac, 94 U.S. 351, 24 L.Ed. 195; Baltimore Steamship Co. v. Phillips, 274 U.S. 316, 47 S.Ct. 600, 71 L.Ed. 1069. The defendant, having voluntarily chosen not to assert any defenses in the New York proceeding, is foreclosed from asserting them now. Such matters are res judicata and the New York judgment must be given full faith and credit. * * * The appellant had every opportunity to litigate the case in New York. It failed through its negligence or deliberate omission to do so and was not prevented from doing so by any act of appellee, and it may not litigate the issue in a collateral attack upon the judgment."
Southern-Aire has sought to equate the New York judgment requiring liquidation of its business with an order requiring corporate dissolution. It argues that this exceeds the New York Court's power and authority since a New York Court has no jurisdiction, or authority, to order dissolution of a Florida corporation.
The New York judgment confirmed the Impartial Chairman's award, which, in turn, incorporated the settlement offered by the Respondents, through their counsel. This settlement offered by the respondents provided, in part, that, "Southern Aire Coats of Florida, Inc. will liquidate its business not later than September 30, 1965."
We do not construe the New York judgment as requiring corporate dissolution  merely the liquidation of Southern-Aire's business. While liquidation of a corporation is usually a step in its dissolution, the latter is not a necessary element of the former. In re Burger's Estate, 276 Mich. 485, 267 N.W. 887 (1936); 16A Fletcher, Cyclopedia Corporations § 7968. Furthermore, *232 it would appear that Levine and Dworkin, as holders of two-thirds of Southern-Aire's common stock and all of its preferred stock, were empowered to effect voluntary dissolution of Southern-Aire had this been the extent of the settlement offer. See Fla. Stat. § 608.27, F.S.A. (1965).
Accordingly, we reverse the final decree of the lower court and remand this matter with instructions to enter a decree granting the union's application for enforcement of the New York judgment.
PEARSON, Judge, (dissenting).
I respectfully dissent upon the basis of the following findings of fact and conclusion of law contained in the final decree:
"This Court expressly finds from the evidence and testimony that SOUTHERN-AIRE COATS OF FLORIDA, INC. did not submit or consent to the jurisdiction of the `Impartial Chairman' or to the jurisdiction of the New York State Court. The record is completely barren of any showing that the corporation or the Board of Directors of the corporation agreed to the dissolution or liquidation of SOUTHERN-AIRE COATS OF FLORIDA, INC.
"The attorney for Larry Levine, Inc., without authorization or competent facts, informed the `Impartial Chairman' that SOUTHERN-AIRE COATS OF FLORIDA, INC. was the alter ego of Larry Levine, Inc. and, based upon such information which was not supported or corroborated by any evidence whatsoever, the `Impartial Chairman' approved a settlement proposed by the counsel present at the hearing on July 14, 1965. The settlement provided in part, that Larry Levine, Inc. would pay a stated amount to the Union as damages for the admitted violations, that SOUTHERN-AIRE COATS OF FLORIDA, INC. would liquidate its business not later than September 30, 1965, and that neither firm would violate the collective agreement any further. The decision of the `Impartial Chairman' was to be withheld pending compliance by Larry Levine, Inc. and by Louis Dworkin and Larry Levine, individually, with the settlement offer.
"The settlement offer was not agreed to, approved by or ratified by SOUTHERN-AIRE COATS OF FLORIDA, INC. and the record is clear that Mr. Martin Goldberg, as President of SOUTHERN-AIRE COATS OF FLORIDA, INC. and as a stockholder therein, did not have any knowledge of the counsel for Larry Levine, Inc. agreeing to such settlement as a purported counsel for the Florida corporation."
* * * * * *
"The Union is not active in the State of Florida and does not maintain any offices in the State. Although SOUTHERN-AIRE COATS OF FLORIDA, INC. is a non-union shop, as it has a right to be under the Florida Constitution, the Union failed to show any harm or irreparable injury that would result to it if the corporation was not liquidated. SOUTHERN-AIRE COATS OF FLORIDA, INC. furnishes employment to a number of persons, and the forced liquidation of the business would cause the employees to lose their positions and would cause Mr. Martin Goldberg, the sole stockholder, to lose an investment of approximately $50,000.00. Mr. Goldberg was never a party to the New York Court action, and if he were compelled to liquidate or dissolve his solely-owned corporation, he would be deprived of substantial property without due process of law.
"The Union failed to show that respondent Louis Dworkin had failed to comply with the Judgment of the New York Supreme Court. There was no proof or showing that the individual respondent was associated in any way whatsoever, directly or indirectly, with the respondent, SOUTHERN-AIRE COATS OF FLORIDA, INC. and there was no allegation or proof of irreparable harm or injury that would result to the Union if injunctive relief was not granted. For all that appears in the record, the Union *233 is trying to prevent Mr. Dworkin from working with SOUTHERN-AIRE COATS OF FLORIDA, INC. because the Florida corporation is a non-union shop. However, the Court finds that Mr. Louis Dworkin had consented to and submitted to the jurisdiction of the `Impartial Chairman' and that the Decision and Award is binding upon him."
* * * * * *
"The New York Court did not have any power, authority or jurisdiction to dissolve or liquidate a Florida corporation whose assets are all in the State of Florida, and a corporation that is solely a creation of the Florida statutes. The New York Judgment improperly seeking to dissolve or liquidate SOUTHERN-AIRE COATS OF FLORIDA, INC., a Florida corporation, imposes no duty upon this Florida Court to recognize the Judgment."
* * * * * *
"Obviously, the right to dissolve or liquidate a corporation is exclusive with the state which created the corporation. The Courts of one state do not have the power to dissolve a corporation created under the laws of another state. 19 Am.Jur.2d, CORPORATIONS § 1587."
I would affirm the finding and the decree.
NOTES
[1] Larry Levine, Inc., Southern-Aire Coats of Florida, Inc., Larry Levine, and Louis Dworkin.
[2] See Fla. Stat. §§ 682.17 and 682.18(2), F.S.A. (1967).